UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO CESAR SANCHEZ-MARTINEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>D. FREITAS, et al.,<br><br>    Defendants. | Case No. 22-cv-07144-HSG<br><br>**ORDER ADDRESSING PENDING MOTIONS; SETTING BRIEFING SCHEDULE**<br><br>Re: Dkt. Nos. 20, 21, 25, 26 |

Plaintiff Julio Cesar Sanchez-Martinez, a pre-trial detainee housed at Santa Cruz Main Jail, has filed this *pro se* action against certain Santa Cruz County Jail ("SCCJ") correctional officials. This order addresses the following pending motions: Defendants' motion to dismiss the operative complaint, Dkt. No. 20 at 1-13; Defendants' request to revoke Plaintiff's *in forma pauperis* status, Dkt. No. 20 at 13-15; Defendants' request to stay the proceedings and vacate the discovery and scheduling order, Dkt. No. 21; Plaintiff's request for appointment of counsel, Dkt. No. 25 at 5-6; and Defendants' request to strike Dkt. No. 25, Dkt. No. 26.

**DISCUSSION**

**I.    Amended Complaint**

The operative complaint is the amended complaint docketed at Dkt. No. 11. The operative complaint makes the following relevant allegations. Plaintiff has informed defendants Santa Cruz County Jail correctional officials Ramos, Frietas, Cleveland, Robbins, Shearer, Ainsworth, Ureta, Mora, Ganschow, Zaragoza, Seavers, and Reed of the following unsafe jail conditions that put the safety of Plaintiff (and other inmates) at risk, but Defendants have failed to take any action to rectify these conditions. The door locking mechanism is ineffective and inmates can easily pop open cell doors. Inmates are known to pop open cell doors and assault other inmates. Due to

1   overpopulation, in some cells, SCCJ does not segregate minimum, medium, and maximum
2   security inmates.  SCCJ fails to segregate violent inmates from nonviolent inmates, fails to
3   segregate mental health inmates, and fails to segregate active gang members from dropouts.  SCCJ
4   fails to have an officer present at all times, as required by state regulations.  SCCJ fails to have an
5   adequate officer to inmate staffing ratio, while results in officers responding to emergency buttons
6   hours later.  Plaintiff is a gang dropout and was granted protective custody status, and therefore
7   does not wish to be housed in units with active Sureño and Norteño gang members.  The unsafe
8   conditions have caused Plaintiff to live in constant fear for his safety, and caused him great stress
9   and anxiety.  Dkt. No. 11 at 4-5.  Plaintiff seeks an injunction to "stop classification [officers]
10  from [their] reckless housing actions as well as for them to fix doors and security issues within the
11  jail and to follow title 15 and to cover expenses of my filing" and $500 from each defendant.  Dkt.
12  No. 11 at 3.  The Court found that, liberally construed, Plaintiff's claim regarding the unsafe
13  conditions stated a cognizable Fourteenth Amendment claim.  Dkt. No. 13 at 2-4.

**II.     Motion to Dismiss (Dkt. No. 20 at 1–13) & Motion to Strike Dkt. No. 25 (Dkt. No. 26)**

15          Defendants have filed a motion to dismiss the operative complaint, Dkt. No. 20 at 1–13.
16  Plaintiff has filed an opposition, Dkt. No. 23, and Defendants have filed a reply, Dkt. No. 24.
17  Over three months after the reply was filed, Plaintiff filed a pleading titled "Further Response to
18  Defendants' Motion to Dismiss my Complaint; Motion Requesting to Proceed with Discovery,"
19  Dkt. No. 25.  Dkt. No. 25 is 21 pages in length.  Two pages are a request for appointment of
20  counsel, Dkt. No. 25 at 5-6, and one page is a certificate of service, Dkt. No. 25 at 7.  The
21  remainder of Dkt. No. 25 sets forth additional arguments opposing Defendants' motion to dismiss,
22  along with a single sentence stating that Plaintiff wishes to proceed with discovery.  *See generally*
23  Dkt. No. 25.  Defendants have filed a motion to strike Dkt. No. 25 as an untimely filed and
24  unauthorized surreply.  Dkt. No. 26.

**A.     Motion to Strike Dkt. No. 25 (Dkt. No. 26)**

26          The Court GRANTS Defendants' motion to strike the portions of Dkt. No. 25 that proffer
27  additional arguments opposing Defendants' motion to dismiss.  N.D. Cal. L.R. 7-3(d) provides
28  that once a reply is filed, no additional memoranda, papers or letters may be filed without prior

1    Court approval, except if new evidence has been submitted in the reply or a relevant judicial
2    opinion was published after the date the opposition or reply was filed by filing. N.D. Cal. L.R. 7-
3    3(d). Accordingly, the Court construes Dkt. No. 25 at 1-4, 7-21 as a request for leave to file a
4    surreply to Defendants' motion to dismiss, along with a proposed surreply. Plaintiff's request for
5    leave to file a surreply is DENIED. Dkt. No. 25 at 1-4, 7-21. Defendants' reply brief did not
6    submit new evidence, and Plaintiff's proposed surreply does not reference a newly published
7    relevant judicial opinion.[1] *See* Dkt. Nos. 24, 25. Per N.D. Cal. L.R. 7-3(d), the Court will not
8    consider Plaintiff's unauthorized surreply, Dkt. No. 25 at 1-4, 7-21, in deciding Defendants'
9    motion to dismiss.

### B. Legal Standard for Motion to Dismiss

Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide a short and plain statement of the plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); *see also Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of the nonmoving party. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir.

---

[1] In his proposed surreply, Plaintiff lists grievances in which he gave Defendants notice of the unsafe jail conditions, and alleges that he was assaulted on March 27, 2023, as a result of Defendants' failure to address the unsafe conditions. Dkt. No. 25 at 1-4, 7-21. However, these grievances were not attached to the complaint and the March 27, 2023 assault was not referenced in the complaint. In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b), the court may only consider the complaint and its attached exhibits, and matters properly subject to judicial notice." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007).

2007). Notwithstanding this deference, the reviewing court need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint, *Paulsen*, 559 F.3d at 1071, and need not accept as true legal conclusions cast in the form of factual allegations, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 664; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (quotations and citation omitted).

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

### C.  Analysis

Defendants argue that this action should be dismissed because (1) Plaintiff lacks Article III standing; (2) the operative complaint does not specify each defendant's actions, in violation of Fed. R. Civ. P. 8; and (3) Plaintiff has failed to allege sufficient facts to demonstrate deliberate indifference under the Fourteenth Amendment. *See generally* Dkt. No. 20. The Court addresses each argument in turn below.

#### 1.  Article III Standing

Defendants argue that Plaintiff lacks standing to assert his Fourteenth Amendment claims because, on the face of the complaint, he has suffered no injury in fact and he relies on vague speculation regarding a future risk of harm. Defendants argue that the fact that Plaintiff has been housed in Santa Cruz County Main Jail for years without incident demonstrates the remoteness of the possibility of the harm alleged in the complaint. Defendants also argue that the risk of harm is based on speculative assumptions such as that prison officials allow Norteño and Sureño inmates to interact if housed in the same building, that Plaintiff is under a specific threat of harm, and that jail employees would not protect Plaintiff from harm. Finally, Defendants argue that Plaintiff's

alleged risk of injury is not fairly traceable to Defendants' actions or inaction because Plaintiff has "taken extraordinary measures to attempt to create the alleged danger complained of all in the name of creating leverage to negotiate with the County of Santa Cruz on the delivery of pizza to Main Jail inmates" by offering to teach other inmates how to pop open the doors to teach correctional staff a lesson. Dkt. No. 20 at 8-9. In support of his argument that there is a real threat of future harm, Plaintiff describes incidents that have happened previously, specifically an instance of a dropout who popped a door open on a gang member, and the assaults which are the subjects of C No. 20-cv-6793 BLF, *Carrillo v. Santa Cruz*; C No. 19-cv-7300 EJD, *Lutrell v. Santa Cruz*; and C No. 19-cv-0630 BLF, *Townsend v. Santa Cruz*. Dkt. No. 23 at 3-4.

Article III standing is present only when (1) a plaintiff suffers a concrete, particularized injury which is actual or imminent; (2) there is a causal connection between the injury and the conduct complained of; and (3) the injury will likely be redressed by a favorable judicial decision. *See Carney v. Adams*, 592 U.S. 53, 58 (2020). As to the first requirement, "[a]n injury is imminent if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *MEIC v. Stone-Manning*, 766 F.3d 1184, 1189 (9th Cir. 2014) (internal quotation marks and citation omitted). And a plaintiff must demonstrate that the case is ripe, meaning "not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 141 S. Ct. 530, 534 (2020) (per curiam) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). As to the second requirement, traceability or causation is established by demonstrating a causal connection "between the injury and the conduct complained of," where the injury is "fairly . . . trace[able] to the challenged action of the defendant and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (alteration in original, internal citation omitted). As to the third requirement of redressability, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks and citation omitted).

The elements of a Fourteenth Amendment deliberate indifference to inmate safety claim are (1) the defendant-officer made an intentional decision with respect to the conditions under

which the prisoner-plaintiff was confined, (2) the conditions put the plaintiff at substantial risk of suffering serious harm, (3) the defendant did not take reasonable measures to abate the risk despite the risk being obvious, and (4) the defendant's decision caused the plaintiff's injuries. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016). A prisoner need not wait until he is actually assaulted or harmed to state a claim and obtain relief. *See Farmer v. Brennan*, 511 U.S. 825, 845 (1994) (in context of Eighth Amendment deliberate indifference to safety claim).

When analyzing a claim of standing, a court must "accept as true all material allegations of the complaint," and "construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presume[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (alteration in original, internal citation omitted). Keeping in mind the Ninth Circuit's directive to liberally construe the complaint in favor of Plaintiff and to accept as true all material allegations of the complaint, the Court finds that the complaint has adequately alleged facts from which Article III standing can be reasonably inferred.

Liberally construed, the complaint's allegations satisfy Article III's first requirement of imminent injury: it is reasonable to infer that inmates being able to leave their cells at will, inmates being housed together despite security concerns, and inadequate staffing to ensure inmate safety all pose a substantial risk of serious harm to Plaintiff, who is both a gang dropout and in protective custody. And Plaintiff has alleged injury, namely that the unsafe conditions cause him anxiety and stress. While 42 U.S.C. § 1997e(e) bars prisoner civil rights suits for mental or emotional injury suffered while in custody without a prior showing of physical injury, this prohibition does not apply to claims for injunctive relief. *See Zehner v. Trigg*, 133 F.3d 459, 461-64 (7th Cir. 1997). However, because Plaintiff has not alleged a physical injury, his claim for damages must be DISMISSED with prejudice.

Liberally construed, the allegation that Plaintiff informed Defendants of the unsafe conditions listed above, but Defendants have taken no actions to remedy those conditions, satisfies Article III's second and third requirements. It is reasonable to infer that any injury resulting from

6

the unsafe conditions would therefore be caused by Defendants' inaction; and that imminent injury would be avoided if the unsafe conditions were addressed.

Defendants' arguments that Plaintiff lacks Article III standing do not support dismissal at the pleading stage. Defendants' first argument – the alleged conditions are not actually unsafe because Plaintiff has not suffered any actual harm despite being housed at Santa Cruz County Main Jail for years and Plaintiff is manufacturing the harm by teaching other inmates to pop doors – relies on assertions outside the complaint, which the Court cannot consider when deciding a motion to dismiss. *Outdoor Media Group, Inc.*, 506 F.3d at 899. The Court disagrees with Defendants' second argument that the risk of harm is speculative and is contingent on other events. As discussed above, it is reasonable to infer that Plaintiff is at risk of danger from cell doors that can be opened by inmates at will, by housing inmates together without regard for safety concerns, and from inadequate correctional officer staffing.

The Court therefore DENIES Defendants' motion to dismiss on the grounds that Plaintiff has failed to establish Article III standing, but DISMISSES Plaintiff's request for damages as barred by 42 U.S.C. § 1997e(e).

### 2. Fed. R. Civ. P. 8's Specificity Requirement

Defendants argue that the complaint fails to meet Fed. R. Civ. P. 8's "sufficient notice" requirement because the complaint fails to identify what alleged safety deficiency each defendant was notified about, or when each individual defendant was allegedly informed of a safety deficiency. Defendants argue that because a Fourteenth Amendment violation requires that a defendant both (1) possess knowledge of the risk to a pretrial detainee's safety and (2) fail to take reasonable measures to abate that risk after receiving knowledge, a complaint must plead with specificity each individual defendant's knowledge of the harm or risk and failure to respond to that knowledge. Defendants argue that the complaint fails to place Defendants on notice of either the nature of the risks or when they were allegedly informed of such risks. Dkt. No. 20 at 9-10.

Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what

7

the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted). A *pro se* complaint must be held to less stringent standards than formal pleadings drafted by lawyers, and must be liberally construed. *Id.* at 94. In addition, Fed. R. Civ. P. 8(e) requires the Court to construe pleadings so as to do "substantial justice." Fed. R. Civ. P. 8(e). In light of Plaintiff's *pro se* status, the Court finds that the allegation on pages 5 and 8[2] of the operative complaint that Plaintiff informed all defendants – correctional officers Ramos, Frietas, Cleveland, Robbins, Shearer, Ainsworth, Ureta, Mora, Ganschow, Zaragoza, Seavers, and Reed – of the safety conditions listed in pages 4-5 of the operative complaint and filed grievances reviewed by some of these defendants, Dkt. No. 12 at 4-5, 8, gives Defendants fair notice of the claim that he informed them of the unsafe conditions at issue (doors that can be popped opened, failure to properly segregate inmates, and inadequate staffing).

The Court therefore DENIES Defendants' motion to dismiss on the grounds that the complaint fails to comply with Fed. R. Civ. P. 8.

### 3. Insufficient Facts Alleged to Demonstrate Deliberate Indifference

Defendants argue that the operative complaint fails to allege sufficient factual matter from which the Court can reasonably infer that Defendants were deliberately indifferent to Plaintiff's safety because it cannot be reasonably inferred from the complaint's allegations that Plaintiff has suffered harm. In support of this argument, Defendants also argue that the complaint's purportedly vague and conclusory allegations fail to put Defendants on notice of the alleged events that create a risk; and that those allegations do not warrant injunctive relief. Defendants also argue that the damages claim must be dismissed because the complaint does not allege physical injury. Dkt. No. 20 at 11-13.

The Court DENIES the motion to dismiss the Fourteenth Amendment deliberate indifference claim for failure to state sufficient facts. Defendants' arguments in support of these claims are the same arguments made in their challenges to Plaintiff's Article III standing and the sufficiency of the complaint under Fed. R. Civ. P. 8, which the Court has already rejected.

---

[2] The Court's citations are to the pagination provided by the Electronic Case Filing system.

1  Namely, as discussed above, the complaint gives sufficient notice to Defendants that specific jail
2  conditions put Plaintiff at substantial risk of serious harm; and Plaintiff has alleged mental and
3  emotional injury from the unsafe conditions.
4        The Court GRANTS the motion to dismiss the damages claim because the complaint does
5  not allege physical injury, as required by 42 U.S.C. § 1997e(e) and as discussed above.

### III.     Revocation of Plaintiff's *In Forma Pauperis* Status

      Defendants also seek revocation of Plaintiff's *in forma pauperis* status, arguing that Plaintiff has sufficient assets to pay the required filing fee. Defendants allege that Plaintiff materially misrepresented his financial situation to the Court by failing to disclose his spousal assets and other gifts received, noting that in the six-month period prior to filing suit, Plaintiff received $849 in gifts and payments, and spent $667.43 on discretionary purchases at the prison commissary. Defendants request that the Court either revoke Plaintiff's *in forma pauperis* status or order Plaintiff to document his marital assets and other gifts before considering whether to revoke Plaintiff's *in forma pauperis* status. Dkt. No. 20 at 13-15. Plaintiff argues that he is entitled to proceed *in forma pauperis* status because his wife has a limited salary and also cares for their two-year old son, and because his expenditures are on phone calls, basic toiletries, and edible food, all of which are marked up in price. Dkt. No. 23 at 1-2. The Court DENIES Defendants' request to revoke Plaintiff's *in forma pauperis* status because Defendants have not demonstrated that Plaintiff's allegation of poverty is untrue.

      28 U.S.C § 1915(e)(2)(A) provides that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the allegation of poverty is untrue." 28 U.S.C § 1915(e)(2)(A). An indigent party may be granted permission to proceed *in forma pauperis* upon submission of an affidavit showing inability to pay the required fees. 28 USC § 1915(a). The determination as to whether a plaintiff is indigent and therefore unable to pay the filing fee falls within the Court's sound discretion. *California Men's Colony v. Rowland*, 939 F.2d 854, 858 (9th Cir. 1991), *rev'd on other grounds by* 506 U.S. 194, 195 (1993). While the Court may consider the assets of the plaintiff's spouse in making this determination, it is not required, and any consideration of a

1  spouse's assets must also consider the spouse's expenses and other liabilities. *Escobedo v.*
2  *Applebees*, 787 F.3d 1226, 1236 (9th Cir. 2015). Generally speaking, courts have found the
3  allegation of poverty to be untrue where the plaintiff has more than a few thousand dollars
4  available to him or her. *See, e.g.*, *Walker v. Wechsler*, C No. 116CV01417JLTPC, 2017 WL
5  2535340, at *2 (E.D. Cal. June 12, 2017) (revoking IFP status where plaintiff had received
6  $10,000 in settlement funds at time he filed IFP application); *Hash v. Rallos*, No.
7  220CV1272TLNACP, 2022 WL 951231, at *4 (E.D. Cal. Mar. 30, 2022), *report and*
8  *recommendation adopted*, No. 2:20-CV-01272-TLN-AC, 2022 WL 2181764 (E.D. Cal. June 16,
9  2022) (insufficient evidence that allegation of poverty untrue, although plaintiff was beneficiary of
10 trust totaling $69,697.05 in 2009, because plaintiff alleged that he had no way to receive monies
11 from trust and presented evidence that he had not received anything from trust since 2010 and
12 trustee-brother refused to distribute monies to plaintiff); *Howell v. Villarreal*, C No.
13 119CV01178NONEEPGPC, 2021 WL 5909118, at *4 (E.D. Cal. Dec. 14, 2021), *report and*
14 *recommendation adopted*, No. 119CV01178JLTEPGPC, 2022 WL 379263 (E.D. Cal. Feb. 8,
15 2022) (court revoked plaintiff's *in forma pauperis* status because he deliberately misled the court
16 by hiding a net worth of $200,000 to $300,000); *but see Buckley v. Parks*, No.
17 119CV00682DADSKOPC, 2019 WL 3202578, at *1 (E.D. Cal. July 16, 2019), *report and*
18 *recommendation adopted*, No. 119CV00682DADSKO, 2019 WL 5101987 (E.D. Cal. Oct. 11,
19 2019) (revoking *in forma pauperis* status because during six months prior to filing action, plaintiff
20 received income totaling $1,587.56, an average of $264.59 each month, and spent nearly that
21 entire sum, an average of $248.29 each month).
22    Here, although Plaintiff may have received sufficient monies from May 2022 to November
23 2022 to pre-pay the filing fee in full, the deposits into his account were irregular, from four
24 different persons, and varied in amount from $15 to $196. Dkt. No. 3. It cannot be reasonably
25 inferred from these deposits that Plaintiff has access to outside funds, or that he will continue to
26 receive similar deposits into his account. To the extent that Plaintiff's wife's assets could be
27 imputed to him, there is nothing to indicate that her assets, when liabilities and expenses are also
28 considered, rise to a magnitude comparable to what has led some courts to find an allegation of

poverty to be untrue. Moreover, a finding of *in forma pauperis* does not require complete poverty. Receiving approximately $800 in a six-month period does not establish that an inmate is able to prepay a $350 filing fee without hardship. The Court exercises its discretion and finds that Plaintiff is entitled to proceed *in forma pauperis*, and DENIES Defendants' request to revoke that status.

### IV. Defendants' Request to Stay Proceedings and Vacate Scheduling Order (Dkt. No. 21)

The Court DENIES as moot Defendants' request to stay the proceedings until the motion to dismiss is decided, and GRANTS the request for issuance of a new scheduling order. Dkt. No. 21. The new briefing order is set forth below.

### V. Plaintiff's Request for Appointment of Counsel (Dkt. No. 25 at 5-6)

Plaintiff requests appointment of counsel. Dkt. No. 25 at 5-6. Plaintiff argues that appointment of counsel is warranted because he is unable to afford counsel; he has been granted leave to proceed *in forma pauperis*; his imprisonment greatly limits his ability to litigate; and trial and discovery will likely involve conflicting testimony such that counsel would better enable Plaintiff to present evidence and cross-examine witnesses.

The Court DENIES Plaintiff's requests for appointment of counsel for failure to demonstrate exceptional circumstances. There is no constitutional right to counsel in a civil case unless an indigent litigant may lose his physical liberty if he loses the litigation. *See Lassiter v. Dep't of Social Services*, 452 U.S. 18, 25 (1981). However, a court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). Appointing counsel is within the court's discretion and is granted only in exceptional circumstances. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986) (referring to 28 U.S.C. § 1915(d), which was subsequently renumbered to 28 U.S.C. § 1915(e)(1)). A finding of "exceptional circumstances" requires an evaluation of the likelihood of the plaintiff's success on the merits and an evaluation of the plaintiff's ability to articulate his claims pro se in light of the complexity of the legal issues involved. *See Agyeman v. Corrections Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004). Both of these factors must be viewed together before reaching a decision on a request for counsel under § 1915. *See id.* The likelihood of Plaintiff's success on the merits is unclear at this point.

11

1    Plaintiff has been able to articulate his claims *pro se* and file numerous pleadings, as well as other
2    actions, despite the limitations posed by his incarceration. The request for appointment of counsel
3    is therefore denied for lack of exceptional circumstances without prejudice to the Court *sua sponte*
4    appointing counsel in the future should the circumstances so require. Dkt. No. 25 at 5-6.

## CONCLUSION

For the reasons set forth below, the Court ORDERS as follows.

1. The Court DENIES IN PART AND GRANTS IN PART Defendants' motion to dismiss the amended complaint. The Court GRANTS the motion to dismiss the claim for damages, and DENIES the remainder of the motion to dismiss. Dkt. No. 20 at 1-13.

2. The Court DENIES Defendants' motion to revoke Plaintiff's *in forma pauperis* status. Dkt. No. 20 at 13-15.

3. The Court DENIES as moot Defendants' request to stay the proceedings until the motion to dismiss is decided, and GRANTS the request that a new scheduling order be issued. Dkt. No. 21.

4. The Court GRANTS Defendants' motion to strike the portions of Dkt. No. 25 that serve as a surreply to Defendants' motion to dismiss. Dkt. No. 26.

5. The Court DENIES Plaintiff's request for appointment of counsel. Dkt. No. 25 at 5-6.

6. The Court sets the following briefing schedule. No later than 91 days from the date this order is filed, Defendants must file and serve a motion for summary judgment or other dispositive motion. If Defendants are of the opinion that this case cannot be resolved by summary judgment, Defendants must so inform the Court prior to the date the motion is due. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendants no later than 28 days from the date the motion is filed. Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment. Defendants shall file a reply brief no later than 14 days after the date the opposition is filed. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion.

a. A motion for summary judgment also must be accompanied by a *Rand* notice so that Plaintiff will have fair, timely, and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment).[3] Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact – that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(c), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc) (App. A). (The *Rand* notice above does not excuse Defendant's obligation to serve said notice again concurrently with a motion for summary judgment. *Woods*, 684 F.3d at 939).

//
//
//
//

---

[3] If Defendant asserts that Plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), Defendant must raise such argument in a motion for summary judgment, pursuant to the Ninth Circuit's opinion in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc) (overruling *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the Prison Litigation Reform Act, should be raised by a defendant as an unenumerated Rule 12(b) motion).

13

This order terminates Dkt. Nos. 20, 21, 25, 26.

**IT IS SO ORDERED.**

Dated: 2/1/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge

14