UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO CESAR SANCHEZ-MARTINEZ,<br><br>Plaintiff,<br><br>v.<br><br>D. FREITAS, et al.,<br><br>Defendants. | Case No.  22-cv-07144-HSG<br><br>**ORDER DENYING REQUEST FOR JUDICIAL NOTICE; GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 41, 41-2, 47 |

Plaintiff Julio Cesar Sanchez-Martinez, a state prisoner currently housed at Kern Valley State Prison, has filed this *pro se* action pursuant to 42 U.S.C. § 1983 regarding his conditions of confinement at Santa Cruz County Jail ("SCCJ"), where he was housed as a pretrial detainee.  This order addresses the following pending motions: Defendants' request for judicial notice, Dkt. Nos. 41-2, 47, and Defendants' motion for summary judgment, Dkt. No. 41.  Plaintiff has filed an opposition to the request for judicial notice, Dkt. No. 48, and an opposition to the summary judgment motion, Dkt. No. 45.  Defendants have filed a reply in support of their summary judgment motion, Dkt. No. 46.  For the reasons set forth below, the Court DENIES Defendants' request for judicial notice, Dkt. Nos. 41-2, 47, and GRANTS Defendants' motion for summary judgment, Dkt. No. 41.

## DISCUSSION

### I.     Procedural Background

On or about November 15, 2022, Plaintiff commenced this action by filing the complaint docketed at Dkt. No. 1.  At that time, Plaintiff was a pre-trial detainee housed at Santa Cruz County Jail ("SCCJ").  *See* Dkt. No. 1 at 1-2.  The initial complaint alleged that (1) Plaintiff was housed in dirty cells numerous times; (2) SCCJ is generally unsafe because the doors can be easily

popped open by inmates; active gang members are housed with gang dropouts; SCCJ fails to ensure that there is a staff member present at the control desk at all times; and in May 2022, SCCJ correctional officials housed Plaintiff in an unit which also housed active gang members and where doors could be popped open; and (3) SCCJ has designated some issues as non-grieveable. *See generally* Dkt. No. 1.  The Court dismissed the first and third claims with prejudice because they failed to state a claim, and dismissed the second claim with leave to amend because Plaintiff had not identified how the conditions had specifically put him at risk.  Dkt. No. 7.

Plaintiff filed an amended complaint, which is the operative complaint.  Dkt. No. 11.  The Court found that the amended complaint stated a cognizable Fourteenth Amendment claim against SCCJ correctional officers P. Ramos, D. Frietas, B. Cleveland, D. Robbins, C. Shearer, J. Ainsworth, K. Ureta, V. Mora, D. Ganschow, A. Zaragoza, R. Seavers, and J. Reed (collectively, "Defendants") for deliberate indifference to inmate safety.  The amended complaint alleged that Defendants have not addressed the following known unsafe jail conditions: (1) SCCJ's door locking mechanism is ineffective and inmates can easily pop open cell doors and exit to assault other inmates; (2) SCCJ's housing classification puts inmates at risk because it does not separate minimum, medium, and maximum-security inmates; violent inmates from non-violent inmates; mental health inmates from inmates without mental health issues; and active gang members from dropout gang members; (3) SCCJ does not have an officer present at all times as required by state regulations and necessary for inmate safety, and (4) the SCCJ officer-to-inmate ratio is inadequate, resulting in a delay in responding to inmate activation of emergency buttons.  The amended complaint raised two other claims regarding a December 30, 2022 strip search and the jail mail policy.  The Court dismissed these two claims as barred by Fed. R. Civ. P. 20(a)(2)'s joinder requirements and without prejudice to raising them in separate actions.  *See generally* Dkt. No. 16.

Defendants sought dismissal of this action on the grounds that Plaintiff lacked Article III standing to bring this claim, arguing that on the face of the complaint, Plaintiff had suffered no injury in fact and was relying on vague speculation regarding a future risk of harm; that the complaint lacked the specificity required by Fed. R. Civ. P. 8 because it failed to identify what alleged safety deficiency each defendant was notified about, or when each individual defendant

2

was allegedly informed of a safety deficiency; and that the complaint did not state a Fourteenth Amendment claim because it lacked sufficient factual matter from which the Court could reasonably infer that Plaintiff had suffered harm. The Court denied the motion to dismiss in light of the requirement that *pro se* complaints be liberally construed. The Court dismissed with prejudice the damages claims pursuant to 42 U.S.C. § 1997e(e) because Plaintiff had not alleged physical injury. Dkt. No. 29.

**II.     Request for Judicial Notice (Dkt. Nos. 41-2, 47)**

Defendants have requested that the Court take judicial notice of (1) California Code of Regulations, Title 15, Division 1, Chapter 1, Subchapter 4, "Minimum Standards for Local Detention Facilities;" and (2) Santa Cruz County Superior Court Docket for *The People of California v. Julio Sanchez*, Case No. 21-CV-03676. Dkt. Nos. 41-2, 47. Defendants argue that judicial notice is appropriate pursuant to Fed. R. Evid. 201 and 801(d)(2); *Lockwood v. Wolf Corp.*, 629 F.2d 603, 611 (9th Cir. 1980); and *Skilstaf, Inc. v. CVS Caremark Corp*, 669 F.3d 1005, 1016 fn. 9 (9th Cir. 2012). Dkt. Nos. 41-2, 47.[1] Plaintiff opposes the request for judicial notice ("RJN") on the following grounds. He argues that the facts to be noticed are not relevant to the disposition of this case; that he has never been convicted of a gang allegation or a gang enhancement; that his state criminal proceeding had no mention of gangs; that this RJN is an "ill filing" for which he seeks sanctions; and that the RJN was not permitted by the Court because it is both excessive and Defendants did not first seek leave of court. Dkt. No. 46.

The Court DENIES Defendants' conclusory and barebones request for judicial notice. Defendants have not explained why they are seeking judicial notice of state regulations or of the docket in Plaintiff's state court criminal proceeding. State regulations do not need to be judicially noticed before a federal court may consider or apply them. Defendants also have not identified the grounds for seeking judicial notice. Fed. R. Evid. 201 governs judicial notice and provides two grounds for seeking judicial notice, but Defendants have not identified which ground is applicable to the state regulations or to the case docket. Fed. R. Evid. 801(d)(2), *Lockwood*, and *Skilstaf* are

[1] Dkt. No. 41-2 and Dkt. No. 47 are identical except that Defendants attached the docket for *The People of California v. Julio Sanchez*, Santa Cruz Cty Sup. Ct. C No. 21-CV-03676 to Dkt. No. 47, which they neglected to do when filing Dkt. No. 41-2.

United States District Court
Northern District of California

inapplicable.  Fed. R. Evid. 801(d)(2) provides that an opposing party's statements are not hearsay, but neither the state regulations nor the docket of a state court criminal proceeding are statements from an opposing party.  *Lockwood* concerns whether an affidavit met the requirements of Fed. R. Civ. P. 56(e), but Defendants are not seeking judicial notice of an affidavit.  The *Skilstaf* citation discusses how a district court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.  But the pending motion is a summary judgment motion, not a motion to dismiss.

### III.    Factual Background

The following facts are undisputed unless otherwise noted.

Plaintiff commenced this action in 2022.  Dkt. No. 1.  At that time, he was a pre-trial detainee housed at Santa Cruz County Jail ("SCCJ").  *See* Dkt. No. 1 at 1-2.  Plaintiff was deposed on March 28, 2024.  Dkt. No. 41-3.  As of that date, Plaintiff had been housed at Santa Clara County Jail for a little over three years.  Dkt. No. 41-3 at 40.

#### A.    Door Locks

*Popping Open Cell Doors*.  Many of the cell doors at SCCJ can be popped open by inmates.  Plaintiff has inspected the door locks in all the units in which he has been housed.  Based on his inspection, Plaintiff believes that the doors can be popped open in all but two or three units.  Dkt. No. 41-3 at 29-32.  There are multiple ways to pop open a door.  Inmates can prevent the door from fully closing by stuffing a blanket inside the door or by pushing a sheet or pen part inside the lock.  This allows the inmate to later pop open the door with different objects, such as spoons, sheets, or an ID when correctional staff are not present.  Dkt. No. 41-3 at 24-26.  Inmates learn to pop open doors by learning from or observing other inmates.  Dkt. No. 41-3 at 29-30.

*Plaintiff's deposition testimony regarding lock popping.*  At his March 28, 2024 deposition, Plaintiff made the following statements.  Lock popping happens multiple times a day and multiple times a week but was not happening at the time of the deposition because jail officials had "isolated" him.  Dkt. No. 41-3 at 26.   Plaintiff has had "multiple incidents" where he popped the locks on his door to let officers know that the doors do pop open.  Dkt. No. 41-3 at 39-41.  Plaintiff has popped tray locks to get a tablet.  Dkt. No. 41-3 at 38-39.  Plaintiff is in a state of

United States District Court
Northern District of California

fear and constant stress and anxiety because inmates can pop their door, exit their cell, and assault him. Dkt. No. 41-3 at 33-34. There have been no attempts to pop Plaintiff's door. Dkt. No. 41-3 at 36. Plaintiff is threatened by other inmates daily but, as of the date of the deposition, the last time he was threatened was a week ago by an inmate in his unit (K-Unit). Dkt. No. 41-3 at 34-35. With respect to other inmates popping open doors, this does not directly threaten Plaintiff's safety because he is programming with other inmates and "somebody's got to think twice before doing something like that." Dkt. No. 41-3 at 52. An inmate that Plaintiff was programming with at the time of the deposition told Plaintiff that previously another inmate had popped the door and assaulted another inmate in the shower, but Plaintiff does not know when this incident happened. Dkt. No. 41-3 at 35-36.

*Jail Policies Regarding Lock Tampering*. SCCJ staff are aware that inmates tamper with the locks on cell doors and on food slots. SCCJ staff working at the Main Jail have been trained to inspect doors and locks for tampering, immediately fix tampered locks, and report these incidents and the involved cell resident to superiors for discipline. Dkt. No. 41-4 ("Cleveland Decl."), ¶ 8. Jail policies prohibit tampering with locks. Inmates are subject to discipline if they are discovered tampering with a lock. Dkt. No. 41-3 at 26. The discipline ranges from limitations to revocation of tablet use; limit access to the commissary; or cell lockdown. Dkt. No. 41-3 at 26. Since August 2022, SCCJ staff track lock tampering incidents in the Jail Management System ("JMS"). Cleveland Decl., ¶ 9. The JMS generates a quarterly report so that staff can analyze the means by which incarcerated persons are attempting to breach the locks and modify inspections and trainings as appropriate. Cleveland Decl., ¶ 10. During this same time period, more cameras have been installed in housing units to allow for greater supervision of inmate activity. Cleveland Decl., ¶ 12. Since the implementation of JMS, staff have received further video training demonstrating how inmates tamper with or defeat the locks, and how to prevent or reverse this tampering. Cleveland Decl., ¶ 14. On or about May 2023, jail staff circulated a training bulletin to instruct staff how to inspect locks for all known methods of breaching them. SCCJ also imposed a new requirement on supervisors, requiring them to audit and inspect locks each shift and note the results in the daily Watch Commander Log. Cleveland Decl., ¶ 13. Since the

United States District Court
Northern District of California

5

implementation of JMS and the additional training, the incidents of lock tampering have decreased significantly and jail staff have been able to more quickly and accurately identify inmates who are tampering with locks.

### B. Inmate Classification

SCCJ uses "a nationally-recognized classification tool and policy" to determine inmate classification and housing. This tool is periodically evaluated and meets all state requirements. Dkt. No. 41-5 ("Frietas Decl."), ¶ 5. SCCJ classification does not separately house inmates within these categories: maximum, medium, and minimum-security inmates; active gang members and gang dropouts; inmates with mental health issues and inmates without mental health issues; and violent and non-violent inmates.

When Plaintiff first arrived at SCCJ, he was housed in a general population unit. Dkt. No. 41-8 ("Shearer Decl."), ¶ 5; Cleveland Decl., ¶ 6. Soon thereafter, Plaintiff was moved to the administrative segregation unit. In this unit, Plaintiff was housed in his own cell and not allowed to roam the unit with other inmates. The inmates with whom Plaintiff programmed were inmates that jail classification policy deemed to not be a danger to Plaintiff. Dkt. No. 41 at 7. As of May 2, 2024, Plaintiff was housed in Q-Unit in isolation. Dkt. No. 41 at 7; Shearer Decl., ¶ 5; Cleveland Decl., ¶ 6.

At the time of the March 28, 2024 deposition, Plaintiff was housed in Q-Unit, where two active gang members were also housed. Dkt. No. 41-3 at 61. Plaintiff states that these two gang members regularly threatened to kill him and "fuck him up," but acknowledged that neither gang member had acted on these threats or attempted to pop the locks to act on these threats. Dkt. No. 41-3 at 61-62.

### C. Staffing

15 Cal. Code Regs. § 1027 sets forth the following relevant staffing requirements for California detention facilities:

> A sufficient number of personnel shall be employed in each local detention facility to ensure the implementation and operation of the programs and activities required by these regulations.
> Whenever there is a person in custody, there shall be at least one employee on duty at all times in a local detention facility or in the building which houses a local detention facility who shall be immediately available and accessible to incarcerated people in the

event of an emergency. Such an employee shall not have any other duties which would conflict with the supervision and care of incarcerated people in the event of an emergency. 15 Cal. Code Regs. § 1027. Main Jail staffing meets the minimum requirements set forth in Section 1027. There is always an officer in the control center. Dkt. No. 1 at 31. There are always at least twelve to thirteen staffers at the jail. Cleveland Decl., ¶ 7; Frietas Decl., ¶ 4. At all times, there is at least one and nearly always at least several officers available to respond to emergencies as they occur. Cleveland Decl., ¶ 7; Frietas Decl., ¶ 4. There are no correctional officials staffed inside the housing units. Dkt. No. 45 at 3.

In August 2025, Plaintiff was housed in West Housing Block, which consists of eight units, each housing approximately 20 inmates. West Housing Block is staffed by two housing officers, both of whom have multiple duties other than supervising inmates and which often require them to be away from their station. Some of the housing units are not visible from the officer station. Dkt. No. 45 at 3.

### D.    Defendants' Response to Plaintiff's Grievances

During his time at SCCJ, Plaintiff frequently filed grievances informing jail officials, including Defendants, about his concerns about jail operations. Defendant Cleveland has personally discussed Plaintiff's grievances with him, and has also reviewed and responded to Plaintiff's written grievances through the grievance appeals process. Cleveland Decl., ¶¶ 4-5. Defendant Reed has not personally received complaints from Plaintiff, but has seen grievances filed by Plaintiff, responded to a number of these grievances, and some of these grievances were directed to defendant Reed's superiors for action. Dkt. No. 41-7 ("Reed Decl."), ¶ 4. Defendant Shearer has reviewed and responded to Plaintiff's written grievances. Shearer Decl., ¶ 4. Defendant Robbins has personally received complaints from Plaintiff, primarily regarding mixed inmate classifications and door classifications; and has directly responded to Plaintiff and assured him that his concerns were unfounded. Dkt. No. 41-9 ("Robbins Decl."), ¶ 4. Defendant Robbins has also been involved in reviewing and responding to a number of Plaintiff's written grievances. Robbins Decl., ¶ 5.

Plaintiff does not dispute that defendants Cleveland, Reed, Shearer, and Robbins have responded to his grievances and complaints. However, he states that Defendants, including

United States District Court
Northern District of California

Cleveland, Reed, Shearer, and Robbins, and jail officials generally, have not taken any effective action to address the jail safety problems that he has identified. *See generally* Dkt. No. 45.

**IV.    Motion for Summary Judgment (Dkt. No. 41)**

       **A.    Summary Judgment Legal Standard**

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a) (2014). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact" precluding summary judgment." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130 1134 (9th Cir. 2000).

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631. If the evidence produced by the moving party conflicts with evidence produced by the nonmoving party,

*United States District Court*
*Northern District of California*

the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

### B.   Legal Standard for Fourteenth Amendment

The Fourteenth Amendment governs a pretrial detainee's conditions of confinement claim. The elements of such a claim are:

> (1) The correctional officer defendant made an intentional decision with respect to the conditions under which the pretrial-detainee plaintiff was confined;
> (2) Those conditions put the pretrial-detainee plaintiff at substantial risk of suffering serious harm;
> (3) The correctional officer defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
> (4) By not taking such measures, the defendant caused the pretrial-detainee plaintiff's injuries.

*Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016). With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that necessarily turns on the facts and circumstances of each particular case. *Id.*

### C.   Analysis

Viewing the record in the light most favorable to Plaintiff, the Court finds that Plaintiff has not demonstrated a triable issue of fact as to whether Defendants were deliberately indifferent to his safety. As discussed in further detail below, Defendants have presented evidence that the conditions identified by Plaintiff either did not pose a substantial risk of serious harm to Plaintiff or that they took reasonable available steps to abate the risk to Plaintiff. In response, Plaintiff merely repeats the arguments he makes in the operative complaint, which is his belief that the inmates are at substantial risk of serious harm because jail doors can be popped open; inmates of different security classifications and backgrounds are housed together; the jail does not have a correctional officer staffed inside all housing units at all times; and control stations are unattended at times while correctional officers carry out other duties or attend to incidents. In support of this argument, Plaintiff describes various scenarios in which the above conditions of confinement could lead to dangerous situations, and alludes to incidents involving other inmates resulting from these safety conditions, but does not provide specifics about the incidents, including the date or

United States District Court
Northern District of California

location or the inmates involved. Plaintiff presents no specific evidence that he has been harmed by the specified safety conditions. At summary judgment, the non-moving party must present more than a scintilla of evidence showing a genuine issue of material fact as to the element of the constitutional claim. Plaintiff has only proffered conclusory, speculative testimony about the potential danger posed by these safety conditions, which is insufficient to raise genuine issues of fact as to whether Defendants violated the Fourteenth Amendment. *See Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 739, 738 (9th Cir. 1979).

*Lock Popping.* For purposes of the summary judgment motion, the Court presumes that cell doors that can be popped open put Plaintiff at substantial risk of serious harm. However, the record indicates that Defendants implemented numerous measures to abate the risk to Plaintiff. Defendants trained staff regarding how to prevent, identify, and deter lock popping; tracked lock popping incidents to determine the manner in which locks were being popped and to inform training sessions; required frequent and regular audits of the locks; installed cameras to identify which inmates pop locks; disciplined inmates who pop locks; housed Plaintiff with inmates whom SCCJ had determined he could program safely with; and, for a period of time, housed Plaintiff in a single cell in an administrative segregation unit. Plaintiff does not dispute that Defendants have taken the above steps to address the safety risk posed by cell doors that can be popped open, but simply insists that the jail cannot be safe until cell doors can no longer be popped open and, in the meantime, if there are correctional officers staffed full-time within the housing units who do not leave their post at any time during the shift. The record also indicates that Plaintiff has not suffered any harm from the faulty cell doors. Outside of one incident which the Court addresses below, Plaintiff does not report that any inmate has harmed, or attempted to harm, him during his time at SCCJ. At most, Plaintiff reports receiving verbal threats of harm from two active gang members. Yet Plaintiff acknowledged that these two gang members have never tried to harm him or pop their doors, and even stated in his deposition that he thinks that these gang members would be unlikely to try to assault him while he was programming with other inmates. In his opposition, Plaintiff claims that on March 27, 2023, he was "assaulted without being caught on camera due to

10

poor staffing and monitoring." Dkt. No. 45 at 6.[2] Plaintiff does not allege that the assault was caused by inmates popping open doors and provide no specifics about this assault, such as who was involved, what precipitated the assault, how correctional officials learned of the assault, and how poor staffing and monitoring caused the assault. A vague reference to an assault does not present a genuine issue of material fact as to whether Defendants failed to take reasonable available measures to abate the risk of serious harm that Plaintiff faced from the fact that door locks could be popped. Viewing the record in the light most favorable to Plaintiff, the Court finds that Plaintiff has not demonstrated a triable issue of fact as to whether Defendants took reasonable available measures to abate the risk of harm to Plaintiff from lock popping; and as to whether Defendants' actions regarding lock-popping caused Plaintiff injury. The Court GRANTS Defendants' summary judgment motion with respect to the lock-popping.

*Classification.* It is undisputed that the SCCJ classification policy does not require that inmates of different security levels (minimum, medium, and maximum) be housed separately, or that violent and non-violent inmates be housed separately, or that active gang inmates and gang dropouts be housed separately, or that mentally ill and non-mentally ill inmates be housed separately. Plaintiff makes general claims about the inadvisability of housing these different groups together, but has not identified any specific facts that indicate that this classification policy has put him at substantial risk of serious harm. According to the record, SCCJ classification policy accounted for Plaintiff's safety. For the majority of Plaintiff's time at SCCH, he was housed either in the administrative segregation unit in his own cell or in isolation. When Plaintiff was out of his cell, jail officials ensured that he programmed only with inmates with whom he had no issues. During his deposition, Plaintiff complained about being housed in the same unit as two active gang members who regularly threatened him. Yet Plaintiff acknowledged that these gang

---

[2] Plaintiff alleges that jail officials refuse to provide him with documentation of this incident. Dkt. No. 45 at 6. Plaintiff attaches a November 10, 2023 grievance in which he requests the March 27, 2023 incident report and jail officials deny the request as exempt from disclosure under state regulations. Dkt. No. 45 at 38-41. However, the reason the alleged March 27, 2023 incident does not preclude summary judgment in favor of Defendants is not because Plaintiff has not provided documentation regarding the incident, but because Plaintiff has not provided any details regarding the incident, much less details which might prove Defendants acted unreasonably in how they addressed the door locks.

United States District Court
Northern District of California

members never attempted to assault him or to pop their doors open to assault him; and Plaintiff also stated that these gang members were unlikely to assault Plaintiff as Plaintiff was programming with other inmates. Plaintiff's conviction that housing together certain categories of inmates is dangerous, without any evidence or specific facts, does not create a triable issue of material fact as to whether the classification policy exposed Plaintiff to a substantial risk of serious harm. Furthermore, Plaintiff has not suffered any injury from the SCCJ classification policy. The Court GRANTS Defendants' summary judgment motion with respect to the classification policy.

*Staffing*. Similar to Plaintiff's claim regarding the SCCJ classification policy, Plaintiff's staffing claim is based on his personal conviction as to the general inadvisability of failing to staff the jail in the manner he believes is most effective to ensure inmate safety. Plaintiff argues that there should be an officer present inside the unit at all times, and there should be sufficient officers to handle jail duties such that control stations and housing units are never without an officer present. Plaintiff argues that anything can happen within five seconds' time, and that, at the current staffing level, there are times when control stations or housing units do not have an officer present because the officer is busy handling other duties or responding to an incident. However, in considering a Fourteenth Amendment conditions-of-confinement claim, the question is not what the optimal conditions of confinement might be, but whether the challenged conditions of confinement exposed the pretrial detainee to a substantial risk of serious harm. Plaintiff's conclusory and speculative opinions as to optimal staffing conditions are insufficient to raise genuine issues of fact as to whether SCCJ's staffing levels exposed him to substantial risk of serious harm. Plaintiff vaguely alludes to being assaulted on March 27, 2023 due to "poor staffing," but provides no specifics. It is unclear what Plaintiff means by poor staffing and how staffing led to Plaintiff being assaulted. At the summary judgment stage, Plaintiff must designate specific facts showing that there is a genuine issue for trial. Plaintiff's vague reference to an assault does not present a genuine issue of material fact as to whether Defendants' current level of staffing exposed him to a substantial risk of serious harm. The Court GRANTS Defendants' summary judgment motion with respect to SCCJ's staffing levels.

United States District Court
Northern District of California

**CONCLUSION**

For the reasons set forth below, the Court DENIES Defendants' request for judicial notice. Dkt. Nos. 41-2, 47; and GRANTS Defendants' motion for summary judgment, Dkt. No. 41. Judgment is entered in favor of Defendants and against Plaintiff. The Clerk shall terminate all pending motions as moot and close the case.

This order terminates Dkt. Nos. 41, 41-2, 47.

**IT IS SO ORDERED.**

Dated:   2/3/2026

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California